IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-HC-2215-D

| | | |
|---|---|---|
| MELVIN GALE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JONATHAN MINOR, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

Melvin Gale ("Gale" or "petitioner"), proceeding pro se, petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking early release pursuant to 18 U.S.C. § 3621(e) and credit against his federal sentence for time spent in presentence custody [D.E. 1]. On September 9, 2011, respondent filed a motion to dismiss, or in the alternative, for summary judgment [D.E. 12]. In support, respondent filed declarations of Helen Ramsdell ("Ramsdell"), a Correctional Programs Specialist at the Designation and Sentence Computation Center ("DSCC") for the Bureau of Prisons ("BOP") [D.E. 14], Lori R. Cruz, a Paralegal Specialist at the DSCC for BOP [D.E. 15], and Stargel Jernigan, a Programs Secretary at Rivers Correctional Institution [D.E. 16]. Because respondent attached materials that are outside the scope of the pleadings, the court construes the motion as a request for summary judgment. See Fed. R. Civ. P. 12(d). Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Gale about the motion, the consequences of failing to respond, and the response deadline [D.E. 17]. On September 26, 2011, Gale responded in opposition [D.E. 18]. On September 27, 2011, Gale notified the court that he had been released to a community corrections center [D.E. 19].

When he filed the petition,[1] Gale was incarcerated at Rivers Correctional Institution ("Rivers") pursuant to a February 6, 2008 conviction in the United States District Court for the District of Columbia for distribution of oxycodone within 1,000 feet of a school in violation of 21 U.S.C. § 860(a) (the "federal offense"). Pet. [D.E. 1] 1; Ramsdell Decl. [D.E. 14] ¶ 13 & Attach. 7. The sentencing judge ordered that Gale receive credit for time served. Pet. 3; Ramsdell Decl. ¶ 13 & Attach. 7.

When arrested for his federal offense on July 13, 2006, Gale was on parole for convictions in the Superior Court of the District of Columbia. Ramsdell Decl. ¶¶ 6–8 & Attachs. 3–5; see Pet. 3. On July 26, 2006, Gale was released on bond for his federal offense, Ramsdell Decl. ¶ 10, but on August 24, 2006, Gale was arrested for violating his parole. Id. ¶ 12. On April 25, 2008, after he was sentenced for the federal offense, the United States Parole Commission revoked Gale's parole. Id. ¶ 14 & Attach. 8. The Commission also retroactively re-paroled Gale, effective February 6, 2008, and ordered his parole-revocation sentence to run consecutively to his federal-offense sentence. Id.

In calculating Gale's terms of imprisonment, the BOP determined that Gale was imprisoned for the parole revocation from August 24, 2006 (the date that he was arrested on the parole violation warrant) to February 6, 2008 (the date the Commission re-paroled him). Ramsdell Decl. ¶ 15. The BOP then calculated Gale's federal-offense sentence as commencing on February 6, 2008, the date of its imposition, pursuant to BOP Program Statement 5880.28 and 18 U.S.C. § 3585(b). Ramsdell Decl. ¶ 16. The BOP awarded Gale prior-custody credit against his federal-offense sentence for his imprisonment from July 13, 2006 (the date of his arrest for the federal offense) through July 26, 2006

---

[1] Gale's projected release from incarceration is March 13, 2012. See BOP Inmate Locator, http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=40723-133 (last visited April 9, 2012).

2

(the date he was released on bond). Id. ¶ 17. However, in calculating his federal-offense sentence, the BOP did not award Gale prior-custody credit for when he was imprisoned for his parole revocation (from August 24, 2006 through February 5, 2008), because this period of imprisonment was already credited against his parole-revocation sentence. Id.

During his incarceration for his federal offense, Gale participated in and successfully completed the BOP's Residential Drug Abuse Program ("RDAP"). Resp. Opp'n Mot. Summ. J. [D.E. 18] 3; see Cruz Decl. [D.E. 15] ¶ 8. Gale entered RDAP at the direction of his case manager, who "informed [Gale] that he is [qualified] for the one year sentence reduction if [he] successfully completed the program, and both [the case manager] and . . . Gale signed the notice of RDAP Qualification Form." Resp. Opp'n Mot. Summ. J. 3. Gale completed the RDAP on December 2, 2009. Id. However, on January 12, 2010, "DSCC legal staff determined that Gale was ineligible for [section] 3621(e) early release due to a prior state conviction for attempted murder." Cruz Decl. [D.E. 15] ¶ 9 & Attach. 2. In 1964, Gale was convicted of attempted murder. Id. ¶ 9; see Resp. Opp'n Mot. Summ. J. 2.

Because Gale is no longer subject to the term of incarceration he challenges, the court must examine whether it retains jurisdiction to consider his petition. See Friedman's, Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002). However, Gale remains subject to supervised release. Thus, the court may reduce his supervised-release term if he is successful in obtaining habeas relief, and the court has jurisdiction to rule on the merits of the petition despite Gale's release from incarceration. See, e.g., Watkins v. Haynes, 445 F. App'x 181, 183 (11th Cir. 2011) (per curiam) (unpublished); Wright v. Anderson, No. 5:04-cv-001086, 2008 WL 583442, at *2 (S.D.W. Va. Feb. 29, 2008) (unpublished) (collecting cases).

3

In considering the motion for summary judgment, the court views the evidence in the light most favorable to plaintiff and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. In evaluating affidavits submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay) described in such affidavits. See Fed. R. Civ. P. 56(c); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

As for Gale's claim that he is entitled to credit against his federal sentence for time spent in presentence custody, respondent seeks summary judgment and argues that Gale has failed to exhaust his administrative remedies.[2] Mem. Supp. Mot. Summ. J. 7–8, 13–15. Although the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), do not apply to a petition

---

[2] Respondent concedes that Gale "has . . . exhausted his administrative remedies with respect to his request for early release pursuant to 18 U.S.C. § 3621(e) for completion of the" RDAP. Ramsdell Decl. ¶ 19.

4

under 28 U.S.C. § 2241, a prisoner challenging the execution of his sentence must exhaust administrative remedies before seeking review in federal court. See, e.g., Richmond v. Scibana, 387 F.3d 602, 604 (7th Cir. 2004); Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam) (collecting cases); Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 634 (2d Cir. 2001); see also Asare v. U.S. Parole Comm'n, 2 F.3d 540, 544 (4th Cir. 1993).[3] The BOP provides a sequential administrative process to address prisoner complaints. See 28 C.F.R. §§ 542.13–.15. The purpose of exhaustion is to provide an opportunity to resolve the dispute without the burdens of litigation. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761–62 (3d Cir. 1996). Failure to exhaust is an affirmative defense that a defendant must plead and prove. See, e.g., Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005). In a section 2241 action, exhaustion of administrative remedies is jurisdictional. See, e.g., United States v. Wilson, 503 U.S. 329, 335 (1992); Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam); see also Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004); Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003).

In support of his contention that Gale failed to exhaust his administrative remedies, respondent cites the declaration of Stargel Jernigan, a Programs Secretary employed by the GEO Group, Inc., at Rivers. Jernigan Decl. [D.E. 18] ¶ 1. Jernigan "ha[s] access to, and [is] familiar with, the institution's Administrative Remedy Program files and records, including administrative remedy requests filed by inmates incarcerated at Rivers." Id. ¶ 3. Because Rivers is a privately owned

---

[3] The principle is so well established that the Fourth Circuit consistently affirms dismissals of petitions filed under 28 U.S.C. § 2241 for failure to exhaust administrative remedies. See, e.g., Short v. Hollinsworth, 271 F. App'x 313 (4th Cir. 2008) (per curiam) (unpublished); Carter v. Stansberry, 158 F. App'x 513 (4th Cir. 2005) (per curiam) (unpublished); Watkins v. Compton, 126 F. App'x 621 (4th Cir. 2005) (per curiam) (unpublished).

5

facility that contracts with the BOP to house inmates in BOP custody, Rivers's "Administrative Remedy Program has two separate procedures." Id. ¶¶ 4–5 & Attach. 1. Inmates at Rivers submit grievances "concerning Rivers['s] policies, procedures, practices, and employees .... on Rivers['s] ... forms, and utilize the institution's procedures for filing such grievances." Id. ¶ 5 & Attach. 1. However, for issues such as "sentence computation, designation and transfer issues, and prior custody credit issues .... [i]nmates at Rivers ... must comply with the [BOP]'s Administrative Remedy Program procedures, and must submit their requests using [BOP] forms for [BOP] issues." Id. ¶ 6.[4]

Jernigan reviewed the Rivers Administrative Remedy Program files to determine whether Gale filed any administrative remedies relating to the claims in his petition. See id. ¶ 9. On February 24, 2010, Gale filed an Attempt at Informal Resolution requesting prior-custody credit. Id. ¶ 11 & Att. 3. Gale pursued his claim through the internal grievance process at Rivers, and Rivers staff, including the Associate Warden and the Warden, informed Gale that he was required "to address his concerns to the DSCC, and provided Gale the address" to do so, but Gale did not pursue his administrative remedies. Id.; see also Ramsdell Decl. ¶ 19.

In his response to the motion, Gale relies on the fact that he exhausted the internal grievance procedure at Rivers. Resp. Opp'n Mot. Summ. J. 6. However, as noted, Gale was required to exhaust his claim through the BOP grievance process, because it concerns the computation of his sentence, which only BOP is authorized to adjust. Thus, Gale has not exhausted his administrative remedies.

---

[4] The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15, and the Fourth Circuit has described the grievance process in Hill v. Haynes, 380 F. App'x 268, 269 n.1 (4th Cir. 2010) (per curiam) (unpublished).

6

When an inmate files suit early, courts typically dismiss the action without prejudice. See, e.g., Ford, 362 F.3d at 401; Johnson v. Cannon, C.A. No. 4:08-776-PMD, 2010 WL 936706, at *8 (D.S.C.) (unpublished), aff'd, 390 F. App'x 256 (4th Cir. 2010) (per curiam) (unpublished); Stokes v. Moore, No. 5:08-CT-3045-FL, slip op. at 4 (E.D.N.C. Jan. 26, 2010) (unpublished); Shouse v. Madsen, No. 7:09-cv-00461, 2010 WL 276543, at *1 (W.D. Va. Jan. 19, 2010) (unpublished). A dismissal without prejudice allows the prisoner an opportunity to exhaust the administrative process and then file a new suit, if the prisoner so chooses. Accordingly, the court grants respondent's motion for summary judgment on the exhaustion issue and dismisses without prejudice Gale's claim concerning presentence-custody credit.

As for Gale's claim seeking credit against his sentence for successful completion of the RDAP, "to provide an incentive to federal prisoners to enroll in and complete the Bureau of Prisons' drug treatment programs, Congress authorized the [BOP] to reduce by up to one year the sentence of 'a prisoner convicted of a nonviolent offense' who successfully completes a treatment program." Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999) (quoting 18 U.S.C. § 3621(e)(2)(B)). "[T]he statute grants the Bureau of Prisons broad discretion to grant or deny sentence reductions to inmates . . . ." Id. at 447. The BOP "may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." Lopez v. Davis, 531 U.S. 230, 240 (2001) (citations omitted). "When an eligible prisoner successfully completes drug treatment, the [BOP] thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." Id. at 241; see Cunningham v. Scibana, 259 F.3d 303, 307–08 (4th Cir. 2001).

The BOP denied Gale a sentence reduction based on his prior conviction for attempted murder, because the BOP precludes from eligibility "[i]nmates who have a prior . . . conviction for

7

homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses." 28 C.F.R. § 550.58(a)(1)(iv) (2008); see Cruz Decl. ¶ 8 & Attach. 2. In opposition to this conclusion, Gale relies on Crickon v. Thomas, 579 F.3d 978, 983 (9th Cir. 2009), which held that regulation "invalid because the BOP failed to provide any rationale for the categorical exclusion generally, and because the rationale provided for considering any prior conviction, regardless of its age, is premised upon a mistake of law, i.e., that [section] 3621(e)(2)(B) limits the early release incentive to inmates who have no prior convictions for violent offenses."[5] Another court in this district has rejected the Ninth Circuit's conclusion, and this court agrees with that court's analysis. See Cockerham, 2011 WL 2669260, at *2; see also Jenkins v. Fed. Bureau of Prisons, C/A No. 0:08-3776-CMC-PJG, 2010 WL 412542, at *1, *4 (D.S.C. Jan. 28, 2010) ("Many courts considering challenges to 28 C.F.R. § 550.58 based on Arrington have rejected or declined to follow the Ninth Circuit's reasoning in that case." (collecting cases)); cf. Austin v. Fed. Bureau of Prisons, No. 6:09-485-MBS, 2010 WL 412815, at *5 (D.S.C.) (Section 550.55 "is a valid exercise of the BOP's discretion under [section] 3621(e)(2)(B)"), aff'd, 382 F. App'x 275 (4th Cir. Jun. 9, 2010) (per curiam) (unpublished).

Gale also contends that the BOP impermissibly applied its regulations retroactively in determining his eligibility for a sentence reduction, because he "signed and completed the [RDAP] before the BOP [a]mended the new [r]ule to the BOP Policy[.]" Resp. Opp'n Mot. Summ. J. 9. However, the BOP applied the regulation in effect at the time Gale entered the RDAP in determining his eligibility for the sentence reduction. Cruz Decl. ¶ 8 & Attach. 2. Moreover, the BOP carefully

---

[5] After the Ninth Circuit's decisions in Crickon and Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008) (invalidating another portion of 28 C.F.R. § 550.58), the BOP promulgated 28 C.F.R. § 550.55. The provisions are nearly identical, but 28 C.F.R. § 550.55 contains a "detailed rationale as to why [certain] inmates . . . are ineligible for consideration for early release." Cockerham v. Johns, No. 5:09-HC-2125-FL, 2011 WL 2669260, at *2 n.* (E.D.N.C. July 7, 2011) (unpublished).

8

considered whether Gale's prior conviction fell into the category of prohibited convictions. See id., Attach. 2. Thus, the BOP has "interpret[ed] the statute reasonably, in a manner that is not arbitrary or capricious," Lopez, 531 U.S. at 240 (citations omitted), and respondent is entitled to summary judgment.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court determines that reasonable jurists would not find the court's treatment of any of Gale's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c).

For the reasons stated, the court GRANTS respondent's motion for summary judgment [D.E. 12] and DISMISSES petitioner's application for a writ of habeas corpus. The court DENIES a certificate of appealability and DIRECTS the Clerk of Court to close the case.

SO ORDERED. This 9 day of April 2012.

JAMES C. DEVER III
Chief United States District Judge